**Lester C. JONES, William T. Fulton & Pennmarva Dairymen's Federation, Inc., Plaintiffs,**

v.

**Bob BERGLAND, Secretary of Agriculture of the U. S., Defendant,**

**and**

**Tuscan Dairy Farms, Inc., Applicant for Intervention.**

Civ. A. No. 77–3271.

United States District Court, E. D. Pennsylvania.

Oct. 28, 1977.

Donald F. Copeland, Philadelphia, Pa., for plaintiffs.

Robert S. Forster, Jr., Asst. U.S. Atty., Philadelphia, Pa., Harry Polikoff, New York City, Philip M. Hammett, Philadelphia, Pa., John M. Freyer, Williams, Micale & Wells, Syracuse, N.Y., for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

After careful consideration of the pleadings, testimony, memoranda and arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT [1]

1. Plaintiffs, Lester C. Jones and William T. Fulton, are producers of milk. Lester C. Jones sells his milk to a handler regulated under Federal Order No. 4 (7 C.F.R. 1004). William T. Fulton sells his milk to a handler regulated under Federal Order No. 2 (7 C.F.R. 1002).

2. Plaintiffs, Inter-State Milk Producers' Cooperative, Lehigh Valley Cooperative Farmers, Maryland Cooperative Milk Producers, Inc., Maryland and Virginia Milk Producers and Capitol Milk Producers Cooperative, Inc., are associations of producers marketing the milk of their members in Federal Orders 2 or 4 or in both Orders 2 and 4. Each cooperative is a qualified cooperative organization with full authority to act pursuant to law.

3. Defendant is the Secretary of Agriculture of the United States.

4. Jurisdiction is based upon 28 U.S.C. § 1331(a) and 28 U.S.C. § 1337.

5. The Agricultural Adjustment Act of May 12, 1933, 48 Stat. 31, as amended, 7 U.S.C. § 601, et seq., authorizes the Secretary of Agriculture to promulgate regulations called marketing orders; to estab-

---

1. Findings of fact number "1" through "13" are supported by a preponderance of the evidence and are made pursuant to plaintiffs' request. (Docket Item 22.) Findings numbers "11" in part, "13", "15", "16", "17", "18", and "19" requested by plaintiffs are denied as not supported by the evidence. The said findings are also denied for the reason that this Court considers it unnecessary to make further findings of fact at this preliminary stage of litigation in view of our determination that the record does not support a finding of irreparable harm to plaintiffs.

lish minimum class prices and otherwise regulate the handling of milk in the particular marketing areas of the United States as designated by him.

6. Pursuant to authority under the Agricultural Adjustment Act, the Secretary of Agriculture has promulgated Federal Order 2 to regulate the marketing of milk in North Jersey and the New York Metropolitan Area and other areas not relevant hereto; and Federal Order 4 to regulate the marketing of milk in South Jersey and the Philadelphia Metropolitan area and other areas not relevant hereto.

7. Prior to the amendment of Federal Order 2, the legality of which is the issue in this action, the basic Class I price in Federal Order 2 was the basic formula price (7 C.F.R. 1002.50), plus an add-on of $2.40 (7 C.F.R. 1002.50a).

8. The basic Class I price in Federal Order 4 is the basic formula price (7 C.F.R. 1004.51) plus an add-on of $2.78 (7 C.F.R. 1004.50).

9. Under each Order the aggregate amount of milk used monthly in each of the classes by all handlers under the Order is determined, and then multiplied by the applicable class prices. The total is then divided by the total number of pounds of milk in both classes. The resulting number (subject to certain adjustments) is the uniform price.

10. Each producer (or if a member of a qualified cooperative, the cooperative) is entitled to receive this uniform price (subject to certain adjustments) for the pounds of milk delivered by him to handlers under the respective Orders, regardless of the use made of the milk by the particular handler to whom the producer sold his milk. The handler however pays for the milk delivered to him based on his class use; and any difference between the prices so payable and the uniform price paid to the producers delivering milk to him, is adjusted through a fund—the Producer Settlement Fund—maintained under the particular order.

11. On January 9, 1976, the Secretary of Agriculture caused to be issued a notice of hearing for Federal Order 2 which notice was published in the Federal Register, January 14, 1976, Volume 41, No. 9 at pages 2092 and 2093. The notice, insofar as it is relevant to issues herein considered, contained proposals for adjustments of certain location and transportation differentials in Federal Order 2.

12. The hearing was held at New York City on February 17–20, 1976 and at Syracuse, New York on February 23–26, 1976.

13. On August 12, 1977, a final partial Decision and Order were issued by the Secretary of Agriculture amending the provisions of Federal Order 2 to reduce the Class I price add-on (7 C.F.R. 1002.50a(a)) from $2.40 to $2.25. This amendment was made effective November 1, 1977, by Final Rule of the Secretary issued September 27, 1977.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction to grant a stay against enforcement of the Order.

2. Plaintiffs will not sustain irreparable harm if the Order as amended is not stayed.

### DISCUSSION

The complaint alleges that this action is brought on behalf of the named plaintiffs and "on behalf of the cooperative association members thereof and the producer membership of said Associations and other producers similarly situated". (Complaint, page 1) The original complaint listed as named plaintiffs a dairy farmer, named Jones, who produces milk which he sells to a handler regulated under Federal Milk Marketing Order 4; a dairy Farmer, named Fulton, who produces milk which he sells to a handler regulated under Federal Milk Marketing Order 2; and Pennmarva Dairymen's Federation, Inc. ("Pennmarva") an agricultural cooperative federation, composed of individual cooperative associations. The amended complaint adds as plaintiffs five of "Pennmarva's" individual cooperative associations, including Inter-State Milk Producers' Association.

Plaintiffs urge that the Secretary be enjoined from permitting the subject Federal

488

Milk Marketing Order 2, as amended, from becoming effective on November 1, 1977. Plaintiffs claim that they will be irreparably harmed if the order becomes effective, or in the alternative if the lower price differential is not preserved for producers in an interest bearing escrow account.

Defendants urge the court to deny the injunction arguing:

It is well-settled that the standards that must be applied by the Court in exercising its powers to grant extraordinary relief to stay an agency decision were clearly enunciated by the Second Circuit Court in *Eastern Airlines v. Civil Aeronautics Board*, 261 F.2d 830 (2d Cir., 1958) as follows:

The Court of Appeals for the District of Columbia has recently held in *Virginia Petroleum Jobbers Association v. Federal Power Commission*, D.C. Cir. [104 U.S. App.D.C. 106] 259 F.2d 921, that stay of an order of an administrative agency may be granted only when the following conditions are met.

(a) When the petitioner is likely to prevail on the merits of its appeal;

(b) Where the petitioner has shown that without a stay it will suffer irreparable injury;

(c) Where there is no substantial harm to other interested parties; and

(d) Where the public interest will not be harmed.

(Secretary's brief, page 4)

We agree that *Virginia Petroleum Jobbers Association* sets forth the conditions which must be met. However, in view of the fact that we determine the evidence does not establish that plaintiffs will suffer irreparable injury between Nov. 1, 1977 and Dec. 16, 1977, the date of expected final hearing, we need not and do not determine whether plaintiffs have met the other requirements. Thus, we proceed here directly to the question whether plaintiffs have made a proper showing that the implementation of the marketing order as amended will result in irreparable harm to their interests.

A careful examination of plaintiffs' complaint reveals that two allegations are made relative to injury. The allegations read as follows:

25. Unless the decision and order of the Secretary are enjoined, producers shipping milk priced under Order 4 to handlers in part of New Jersey will be at an uncompetitive disadvantage, and could suffer loss of their markets to their irreparable harm.

26. The action of the Secretary complained of will cause a reduction in the uniform price paid to farmers and reduce the Producer Settlement Fund in Both Orders 2 and 4.

▆▆▆ There is a clearly discernible speculative overtone to plaintiffs' representation that producers shipping milk priced under Order 4 to handlers in part of New Jersey could suffer loss of their markets. In order to sustain an action for preliminary injunctive relief, plaintiffs' allegations must reflect substantial certainty that plaintiffs will in fact experience irreparable harm if the requested relief is denied. We find that the evidence present in support of paragraph 25 of plaintiffs' complaint does not meet the standard of certainty required. Paul E. Hand, plaintiffs' expert witness in the hearing held before this Court on October 13, 1977, has filed an affidavit and testified in support of paragraph 25 of plaintiffs' complaint that a particular handler who currently purchases milk from plaintiff Inter-State *"could* be forced to change his plant status to Order 2" from Order 4 as a result of the lower costs relative to handling milk in Order 2 brought about by the proposed amendment to the marketing order. (emphasis supplied) (affidavit of Hand, paragraph 26, pp. 7–8). We note that this testimony does not cure the fatal speculative character of plaintiffs' representation relative to injury. On the contrary, the Hand allegation is strong evidence to the effect that there is genuine doubt even on the part of plaintiffs' expert as to whether plaintiffs will if fact suffer the harm complained of. The evidence does not support a finding of irreparable harm in this regard prior to final hearing.

Similarly, plaintiffs' evidence does not sustain the allegation that implementation of the proposed marketing order will cause a reduction of the uniform price paid to farmers and reduce the Producer Settlement Fund in both Orders 2 and 4, and thus result in irreparable harm to plaintiffs *pendente lite*.

■ Initially, it must be said that it is unclear from plaintiffs' complaint what class of farmers will experience irreparable harm if a reduction of the uniform price occurs. If plaintiffs refer to Order 2 dairy farmers as a class, we find substantial evidence in the record which challenges the validity of such an averment. The evidence establishes that there are 18,602 producers under Order 2. Mr. Hand's reply affidavit, to the affidavit of Herbert L. Forrest, argues that approximately 10,300 of the eligible producers voted. The affidavit concedes that 90% of those voting voted in favor of the amended order. Additionally, plaintiffs concede that 80% of the producer members of cooperatives associated with plaintiff "Pennmarva" voted in favor of the amendment. We agree, as argued by plaintiffs, that the referendum may not validate an otherwise invalid order; however, the vote is eloquent testimony that a vast majority of the producers approve of the amended order and do not believe it to be a source of irreparable injury, and we find that it is not. We note also the intervention of cooperatives in this action. We find especially probative of the proposition that the marketing order, as amended, will not cause plaintiffs irreparable harm the fact that the intervenors, Dairlea Cooperative, Inc., Northeast Dairy Cooperative Federation, Inc., and Eastern Milk Producers Cooperative Association, Inc., have vigorously denied that they will suffer harm if the proposed marketing order is implemented. Indeed, they have argued that they will be harmed if this Court stays the order as urged by plaintiffs. We note that the intervenors respectively represent a group of Order 2 producers many times the size of the approximately sixteen Order 2 plaintiff dairy farmers who voted against the order. Judging from the dimensions of interve-

nors' financial interests at stake, it would seem that they would suffer substantially greater harm than plaintiffs if the proposed marketing order has the adverse impact on the blend price of Order 2 producers plaintiffs contend.

Of course, plaintiffs may argue that even if the class of Order 2 producers will not suffer irreparable injury that the named plaintiffs will. The answer to this argument is that in regard to the blend price reduction contention there is no evidence to support individual harm to named plaintiffs.

If plaintiffs argue that as a result of the reduced blend price Order 4 producers will suffer irreparable harm, we find that as to this anticipated harm there is an adequate administrative remedy. Indeed the Secretary has promptly responded to this concern of Order 4 producers and held an administrative hearing. There is no evidence to support the contention that Order 4 producers will be irreparably harmed before the Secretary acts on the proposals regarding amending Order 4. Nor is there any evidence that irreparable harm will occur prior to final hearing in this action.

In conclusion, we find that plaintiffs have not made a proper showing that irreparable harm will result, *pendente lite*, either from the alleged reduction in the blend price or the diminution of the Producer Settlement Fund. The expedited final hearing is a more equitable safeguard for all parties in interest than the remedies urged by plaintiffs.